*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY C. DAVIS,

        Plaintiff/Counterdefendant-
        Appellant,

v

JILL LYNN DAVIS,

        Defendant/Counterplaintiff-
        Appellee.

UNPUBLISHED
May 7, 2019

No. 346829
Midland Circuit Court
Family Division
LC No. 16-004049-DM

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals by right the uniform child support order issued by the trial court after a domestic relations bench trial. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties were married in May 2000 and had four children together. The youngest child, ND, is autistic and received therapy on Tuesdays and Thursdays. The oldest child, AD, battled cancer when he was younger and continued to receive ongoing medical treatment. All four of the children attended different schools; ND was enrolled in a special needs program at his elementary school. In October 2016, plaintiff filed for divorce, seeking joint legal custody and sole physical custody of the children. The parties continued to live together during the divorce proceedings until plaintiff moved out approximately one month before the domestic relations bench trial. After plaintiff moved out, he began exercising parenting time, while defendant maintained primary physical custody. Every other week, plaintiff received parenting time from Thursday at noon to Sunday at 6:00 p.m.; on the off-week, plaintiff had the children from after school until 7:00 p.m. on Wednesday. This schedule required plaintiff to take the children to school every other Friday.

At the bench trial, plaintiff testified that he had worked at Utility Lines Construction Services for more than 10 years, and that his position required him to travel to various worksites located throughout the state. Although his schedule varied depending on the worksite he visited,

his normal hours were between 6:00 a.m. and 5:30 p.m. Monday through Friday; the latest defendant could arrive at work was 7:15 a.m. His worksites were generally located within a 15- to 90-minute drive of his home. Defendant testified that she was working at a United Parcel Service (UPS) store, and that her hours were between 8:30 a.m. and 2:00 p.m. Her boss was a friend, and defendant had the ability to leave work at any time to care for the children. The parties had also owned a gym together for a number of years; before the start of the divorce proceedings, defendant had primarily stayed at home to take care of the children or worked in the gym.

Plaintiff sought an equal parenting-time arrangement with an alternating week-to-week schedule. He testified that he believed that his work schedule was flexible enough to allow him to take the children to and from school and to otherwise attend to their needs for a full week. Defendant, however, sought to maintain the existing parenting-time arrangement. She testified that she believed that plaintiff's employment prevented him from maintaining the children's schedule; further, she argued that, although he undoubtedly loved the children, he was limited in his ability to connect with the children emotionally, to parent them effectively, and to care for their needs, especially ND's special needs.

After the bench trial, the trial court granted joint legal and physical custody but agreed with defendant in regard to parenting time, largely maintaining the existing parenting-time schedule with only minor modifications.[1]

This appeal followed. On appeal, plaintiff does not challenge the trial court's award of custody, only the award of parenting time.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's dispositional rulings regarding child custody. *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003). "[A]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010) (quotation marks and citation omitted; alteration in original). Furthermore, "[o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Id*. at 20-21 (quotation marks and citation omitted). "[T]his Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Id*. at 21. "Clear legal error occurs 'when the trial court errs in its choice, interpretation, or application of the existing law.' " *Id*. (quotation marks and citation omitted).

---

[1] Specifically, the trial court maintained the existing arrangement during the school year, but ordered that plaintiff would receive every spring break as parenting time, and also ordered that summers be split equally between the parties.

III. ANALYSIS

Plaintiff argues that: (1) the trial court failed to consider the effect of unequal parenting time on the established custodial environment, and (2) the trial court's findings on the best-interest factors were against the great weight of the evidence. Plaintiff specifically challenges the findings on factors (a), (c), (f), and (*l*). We disagree with both arguments.

The Child Custody Act of 1970, MCL 722.21 *et seq*., states in pertinent part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> * * *
>
> (b) Provide for reasonable parenting time of the child by the parties involved, by the maternal or paternal grandparents, or by others, by general or specific terms and conditions. Parenting time of the child by the parents is governed by section [722.27a]. [MCL 722.27(1)(b).]

MCL 722.27a provides in relevant part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time. [MCL 722.27a(1).]

A trial court's decision regarding parenting time is controlled by the best interests of the children. *Shade*, 291 Mich App at 31. The trial court's decision regarding parenting time may consider "[b]oth the statutory best interest factors in the Child Custody Act, MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a(6) . . . ."[2] *Shade*, 291 Mich App at 31.

The statutory best-interest factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

---

[2] Former MCL 722.27a(6) has been renumbered as MCL 722.27a(7). See 2016 PA 96, effective August 1, 2016.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

A. EFFECT ON ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff first argues that the trial court erred by failing to consider the effect of a parenting time change on the children's established custodial environment. "The established custodial environment is the environment in which 'over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.' " *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010), quoting MCL 722.27(1)(c).

Here, the trial court found that there was an established custodial environment with each parent, and that clear and convincing evidence was needed to change it. Plaintiff does not

-4-

dispute this finding; rather, plaintiff argues that the trial court's order awarding unequal parenting time (which essentially formalized the existing parenting-time arrangement) affected the established custodial environment. We disagree. A change in the parenting time schedule

> does not necessarily mean that the established custodial environment will have been modified. *If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed.* [*Pierron*, 486 Mich at 86 (citation omitted; emphasis added).]

Upon our review of the record, we are convinced that the order maintaining the existing parenting-time schedule did not change to whom the children looked for guidance, discipline, the necessities of life, and parental comfort. The trial court's order merely maintained, for the most part, the existing parenting-time arrangement under which the parties had previously provided their children with guidance, discipline, the necessities of life, and parental comfort. If anything, the trial court's slight deviations from the status quo resulted in slightly increased parenting time for plaintiff. Accordingly, we do not believe that the trial court's parenting-time decision resulted in a change to the established custodial environment. *Id.*

## B. BEST-INTEREST FACTORS

Regarding the best interests of the children, trial court conducted a review of the statutory best-interest factors,[3] and contrary to plaintiff's argument, the trial court's findings on the best-interest factors (a), (c), (f), and (*l*) were not against the great weight of the evidence. *Shade*, 291 Mich App at 21. The trial court found that factor (a) slightly favored defendant. It found that although both parties were "connected to the children with love, affection and emotional ties," plaintiff was "not as connected as Defendant to the emotional feelings," and there were "some instances that were noted where Plaintiff does seem . . . not to factor in the feelings of the children when he acted." Defendant testified that, although plaintiff had given the children more emotional support when they were younger, as the children had gotten older it had become difficult for him to connect on a deeper emotional level. She further testified that if a situation with the children did not go his way, he became very upset. She testified to incidents in which plaintiff had ridiculed the children, had used demeaning language towards them, and had made "them feel less than what they are." Accordingly, the evidence supported the trial court's findings on this factor.

The trial court found that factor (c) slightly favored defendant. It found that although plaintiff was more capable of providing for the children's material needs, defendant was more "able to provide to maintain . . . the children's lifestyle." The trial court further found that ND would likely require special care and that defendant "appear[ed] to have been more involved and supportive of the need for this assistance." Defendant testified that her job allowed her to

---

[3] The trial court also reviewed the factors from the parenting time statute, MCL 727.27a(7). Plaintiff does not challenge the trial court's findings regarding those factors.

coordinate the children's travel to and from school. She was able to follow the children's regular schedule by taking them to school close to the time that school began. Further, defendant was able to leave work at any time to attend to the children's needs. In contrast, plaintiff's work schedule had varied in the past and required him to travel. Although plaintiff testified that his schedule had been consistent for many years, he acknowledged that his schedule could change and could require him to work longer hours at greater distances. Additionally, plaintiff testified that, when taking the children to school on Fridays, he had to drop two of the children, RD and DD, at "before school care" at their school, and then drop ND at a community center that had a program to take care of children before school, because of his work schedule. The program at the community center was not specifically designed for autistic children and did not provide an aide for ND. Plaintiff testified that he would have to get all of the children dropped off in time to get to work by 7:15 a.m. On balance, the evidence supported the trial court's finding that this factor slightly favored defendant. *Shade*, 291 Mich App at 21.

The trial court also found that factor (f) slightly favored defendant. The trial court noted that there was "no evidence to show either party is morally unfit." However, the trial court did find that there was "some evidence to establish Plaintiff may not exercise the best judgment in his interactions with others." The trial court noted some problems with plaintiff's disciplinary efforts, and that plaintiff had used degrading language towards defendant while in public. These findings were supported by the record. Cindy Thomas, who knew the parties, testified about an incident in which plaintiff failed to apologize to AD after disciplining him in error; the incident involved plaintiff "screaming" at AD because he believed he had stolen plaintiff's banana. Furthermore, Kala Bradley, who had attended the parties' gym, testified that plaintiff had once spanked ND at the gym without informing him what he had done wrong. She also opined that plaintiff did not fully understand the fact that ND, being autistic, needed extra time to process information. Defendant testified that plaintiff would be "very degrading in his comments and undercutting." She explained that he would make a person feel as if they were "the dumbest person that ever walked the . . . earth." She stated that he would not let her send e-mails because of her grammar; further, he had told her, in front of other people, that she looked "silly and crazy" in photos and, consequently, he would not let her appear in photos for the gym. The evidence supported the trial court's finding that this factor slightly favored defendant. *Shade*, 291 Mich App at 21.

The trial court found that factor (*l*) favored defendant, stating that there had been "an issue with the work schedule and travel necessities for Plaintiff." The trial court acknowledged that plaintiff had "made arrangements . . . for his current parenting time needs." Yet, the trial court stated that "it may become more problematic the more parenting time is exercised by [plaintiff] during the work week." Furthermore, the trial court stated that

> [t]he issue of [the] special needs child is also addressed later in the parenting time assessment. However, it also impacts custody to the extent a child with autism does thrive better in a consistent lifestyle pattern and schedule. Significant changes during the school week can create obstacles in the child's behaviors

As previously discussed, plaintiff's work schedule was less conducive to attending to the children's needs, especially ND's special needs. Plaintiff acknowledged that, if he was working a great distance away and there was an emergency with the children, he would need "friends" to

take care of the children until he arrived. There was no indication that defendant required the same assistance. Therefore, although plaintiff had been relatively successful in taking the children to school on Fridays, the uncertainty of his work schedule and the distance that he could potentially be from the children and the children's schools supported the conclusion that plaintiff's schedule was less conducive to an alternating-week schedule. The evidence supported the trial court's finding that this factor favored defendant. *Shade*, 291 Mich App at 21.

The trial court's findings on the best-interest factors were not against the great weight of the evidence. *Id*. In total, the trial court found that four factors favored defendant, none favored plaintiff, and seven factors favored neither party.[4] In considering both the best-interest factors and the parenting-time factors, the trial court based its parenting-time award on the children's best interests. This award was "reasonably calculated to promote a strong relationship between the child and the" plaintiff, MCL 722.27a(1), and was not an abuse of the trial court's discretion. *Shade*, 291 Mich App at 2.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[4] The trial court also interviewed three of the four children to ascertain their reasonable preferences under factor (i). However, the trial court chose not to disclose its findings on this factor.